IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

Bertha Mize-Jackson, as next friend for M.M., a minor )
)
Plaintiff, )
)
v. )
)
Andre Walker, MV Transportation, Inc. of California, )
And Greater Peoria Mass Transit District, )
)
Defendants. )

**COMPLAINT**

Plaintiff Bertha Mize-Jackson, as next friend of M.M., a minor, by and through her attorneys, complaining of Defendants Andre Walker, MV Transportation, Inc. of California, and Greater Peoria Mass Transit District, and states the following:

**INTRODUCTION**

**1.** M.M. is a thirteen year old child who suffers from autism. During the summer, M.M. attends programs put on by the Heart of Illinois Special Recreation Association in Peoria, Illinois.

**2.** In order to get home after his program is done for the day, M.M. often rides the CityLift bus system to his grandmother's house.

**3.** On June 18, 2019, M.M. was picked up by the CityLift bus in order to be taken to Plaintiff's house. Instead, the CityLift bus driver, Defendant Andre Walker, drove M.M. to Morton, Illinois (10 miles southeast of Peoria) and abandoned M.M. at a gas station.

**4.** When M.M. was finally discovered several hours later, wandering a county road, he was severely traumatized by the event.

5. Plaintiff now brings this lawsuit not only to seek justice for the wrongs committed on M.M. but to make sure that no other child or their parents have to go through a similar horrifying ordeal.

## JURISDICTION AND VENUE

6. This action arises under the laws of the United States, specifically the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(A)-(B). This action also arises under the laws of the State of Illinois.

7. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343.

8. Further, since Defendant MV Transportation, Inc. of California is a corporation organized under the laws of a different state, there is diversity of the parties sufficient to invoke Title 28 of the United States Code, Section 1332.

9. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

10. Venue is proper in the United States District Court of the Central District of Illinois, Peoria division, under Title 28 of the United States Code, Section 1391(b)(2) as the events complained of occurred within this district.

## PARTIES

11. Plaintiff Bertha Mize-Jackson is the grandmother and legal guardian of M.M. and brings this lawsuit as his next friend. During all relevant times, Plaintiff was a resident of the City of Peoria, Illinois.

12. M.M. is a minor and was 13 years old on June 18, 2019. M.M. suffers from autism.

**13.** Defendant Andre Walker was, during all times relevant, employed by MV Transportation, Inc. of California. Defendant Walker was acting within the scope of his agency, service, and/or employment with MV Transportation, Inc. of California during the relevant time.

**14.** Defendant MV Transportation, Inc. of California was, during all relevant times, a duly authorized common carrier in the State of Illinois for the transportation of passengers. Defendant MV Transportation was a California corporation with its headquarters in Texas, doing business in and throughout Illinois. During the relevant time, Defendant MV Transportation employed Defendant Walker as a driver for vehicles assigned to the CityLift program.

**15.** Defendant Greater Peoria Mass Transit, aka CityLink, is a mass transit district based in Peoria, Illinois, operating and doing business under the laws of Illinois.

**FACTS**

**16.** Defendant Greater Peoria is a mass transit district that is responsible for transportation throughout numerous municipalities in the Peoria area.

**17.** One of the programs operated by Defendant Greater Peoria is CityLift. The CityLift program is a paratransit service for individuals who have disabilities and need transportation throughout the Greater Peoria area. It is specifically designed to assist "those individuals who do not have the functional capability to use the fixed-route system."

**18.** Defendant Greater Peoria contracted the operation of the CityLift vehicles to Defendant MV Transportation.

**19.**     Prior to June 18, 2019, Defendant MV Transportation hired Defendant Walker to be a driver of its vehicles. Specifically, Defendant Walker was permitted to operate the CityLift bus.

**20.**     Plaintiff arranged for M.M. to be transported by the CityLift service from M.M.'s camp to M.M.'s residence.

**21.**     One of the conditions of the CityLift program was that the driver of the vehicle transporting M.M. would release M.M. only to a family member to ensure the safety of the child.

**22.**     On June 18, 2019, M.M. attended a summer camp program put on by the Heart of Illinois Special Recreation. The program ended at approximately 4:00 PM.

**23.**     Per an arraignment with CityLift, M.M. was to be picked up from the summer camp program and transported to his home. The drive from the summer camp program to Plaintiff's home was approximately 15 minutes.

**24.**     M.M. was not dropped off at the scheduled time. Plaintiff began to worry about the safety of M.M.

**25.**     Plaintiff contacted CityLift and asked about the location of M.M.

**26.**     Upon information and belief, a dispatcher with CityLift contacted Defendant Walker, who stated that he near the wrong location but would be at M.M.'s home shortly.

**27.**     CityLift then informed Plaintiff that M.M. was on the way.

**28.**     M.M. was not on the way home.

**29.**     Plaintiff continued to wait and, when M.M. was not dropped off, contacted CityLift again.

30. At approximately 5:45 PM – one and a half hours after M.M. was scheduled to be dropped off – Defendant Great Peoria, through its CityLift program, informed Plaintiff that they did not know the location of M.M. and where or if he has been dropped off.

31. An Amber Alert was issued for M.M. throughout the Peoria area.

32. Upon information and belief, a dispatcher with CityLift reviewed the records, which indicated that M.M. had been dropped off at 6:14 P.M. – two hours after he had initially been picked up. The dispatcher contacted Defendant Walker who stated that he had dropped M.M. off at his home and watched M.M. go inside of the home.

33. Defendant Walker was lying; M.M. had not been dropped off at his home.

34. Upon information and belief, Defendant Walker dropped M.M. off at Casey's General Store, which is located at 101 Detroit Avenue, Morton, Illinois.

35. Morton is approximately 10 miles southeast of Peoria, on the other side of the Illinois River.

36. Defendant Walker and, by extension, Defendant MV Transportation and Defendant Greater Peoria did not have authority or permission to transport M.M. to Morton, Illinois.

37. A Good Samaritan was driving near the 2400 block of South Fourth in Morton, Illinois at approximately 6:45 PM. This Good Samaritan observed a child walking by himself.

38. The child walking by himself alongside the road in Morton was M.M.

39. The Good Samaritan contacted the Morton Police Department and an officer was dispatched to the scene.

40. The officer arrived and transported M.M. to the Peoria Police Department.

41. M.M. had walked alone from Casey's General Store to the 2400 block of South Fourth, a distance of 3-4 miles.

42. M.M. was finally reunited with his family a little after 7:00 PM; M.M. had been missing for approximately 3 hours.

43. Because M.M. is mostly nonverbal, he has been unable to tell his family precisely what occurred during the time he was with Defendant Walker.

44. However, M.M. continuously repeated the phrase "no county, no county" to his family, indicating that he was severely emotionally distressed over the incident.

45. After abandoning M.M. at a gas station, Defendant Walker was taken to the CityLift building. Upon information and belief, according to the CityLift Dispatch Supervisor, Defendant Walker was acting "strange" and refused to take a drug test.

46. Upon information and belief, Defendant Walker was interviewed by Peoria Police Officers and gave a statement on June 20, 2019. Peoria has refused to provide Defendant Walker's statement pursuant to a Freedom of Information Act request.

47. On June 20, 2019, Defendant Walker was arrested by members of the Peoria Police Department for endangering the life and health of M.M.

## CLAIMS

### Count I – Violation of the American with Disabilities Act
### Defendants MV Transportation and Greater Peoria

48. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

49. M.M. is a disabled individual under the ADA. Specifically, M.M. suffers from autism, which is a mental impairment that substantially limits one or more major life activities.

50. Under the ADA, Defendants MV Transportation and Greater Peoria were required to provide a paratransit and other special transportation service to individuals with disabilities. These services must be sufficient to provide such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system.

51. Defendants failed to provide such a paratransit or special transportation service to M.M. that provides comparable benefits to the fixed route system used by individuals without disabilities.

52. Specifically, on the fixed-route system, riders are not driven off the route and left stranded at another location.

53. Defendants MV Transportation and Greater Peoria's conduct violated the ADA.

WHEREFORE, Plaintiff, as next friend of M.M., prays for judgment against Defendants MV Transportation and Greater Peoria, and an award of compensatory damages, punitive damages, attorneys' fees, costs, and for any additional relief that is just and proper.

## Count II – False Imprisonment
## Defendants Walker, MV Transportation, and Greater Peoria

54. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

55. On June 18, 2019, Defendant Walker had the authority to transport M.M. from his summer camp to his home. Defendant Walker did not have authority to transport M.M. to Morton, Illinois and abandon him at a gas station.

56. Defendant Walker's transportation of M.M. to Morton, Illinois was an unlawful restraint of M.M.'s personal liberty. During the transportation, M.M. was in a moving vehicle, which was an effective barrier preventing any escape.

**57.** During the relevant time, Defendant Walker acted within the scope of his employment and/or agency with Defendants MV Transportation and Greater Peoria.

**58.** The transportation of M.M. by Defendant Walker was not done solely in Defendant Walker's personal interest. Indeed, the transportation of M.M. in the CityLift vehicle furthered the interest of Defendants MV Transportation and Greater Peoria.

**59.** Defendants MV Transportation and Greater Peoria, as a result, are liable for Defendant Walker's actions under the legal theory of *Respondeat Superior*.

WHEREFORE, Plaintiff, as next friend of M.M., prays for judgment against Defendants Walker, MV Transportation, and Greater Peoria, and an award of compensatory damages, punitive damages, and for any additional relief that is just and proper.

### Count III – Intentional Infliction of Emotional Distress
### Defendants Walker, MV Transportation, Greater Peoria

**60.** Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**61.** On June 18, 2019, Plaintiff arraigned for M.M. to be transported from his summer camp to Plaintiff's home by CityLift.

**62.** Defendant Walker, acting within the scope of his employment and/or agency with Defendants MV Transportation and Greater Peoria, picked M.M. up at the camp.

**63.** Defendant Walker did not convey M.M. to his grandmother. Instead, Defendant Walker transported M.M. to a town nearly 10 miles away and abandoned M.M. at a gas station.

**64.** M.M., who suffers from autism, was alone and in a strange place. M.M. had no idea how to get home and lacked the ability to contact his family for help.

65. Defendant Walker's actions in abandoning a 13-year old autistic child in a strange town was extreme and outrageous and beyond all possible bounds of decency.

66. By abandoning a 13-year old autistic child in a strange place, Defendant Walker either intended or should have known that there was a high probability that his conduct would inflict severe emotional distress upon M.M.

67. When M.M. was finally reunited with his family, he kept repeating "No county, no county" over and over. It was along a country road that M.M. was found wandering.

68. M.M. has remained traumatized over the event and continues to suffer emotional distress from being abandoned by the bus driver who was supposed to ensure he arrived at his grandmother's house safely.

69. During the relevant time, Defendant Walker acted within the scope of his employment and/or agency with Defendants MV Transportation and Greater Peoria.

70. The transportation of M.M. by Defendant Walker was not done solely in Defendant Walker's personal interest. Indeed, the transportation of M.M. in the CityLift vehicle furthered the interest of Defendants MV Transportation and Greater Peoria.

71. Defendants MV Transportation and Greater Peoria, as a result, are liable for Defendant Walker's actions under the legal theory of *Respondeat Superior*.

WHEREFORE, Plaintiff, as next friend of M.M., prays for judgment against Defendants Walker, MV Transportation, and Greater Peoria, and an award of compensatory damages, punitive damages, and for any additional relief that is just and proper.

### Count IV – Negligent Hiring and Retention of Defendant Walker
### Defendant MV Transportation

72. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

73. On or before June 18, 2019, Defendant Greater Peoria was in the business of providing transportation services within the City of Peoria and surrounding area. On or before June 18, 2019, Defendant Greater Peoria hired Defendant MV Transportation to provide personnel who would operate, drive, and/or control Defendant Greater Peoria's vehicles, including the CityLift buses.

74. On or before June 18, 2019, Defendant MV Transportation had a duty to investigate, hire, supervise, and/or retain agents, members, and/or employees who would provide rides and/or services to disabled individuals, including M.M., with a safe environment.

75. On or about June 18, 2019, Defendant Walker operated, drove, and/or controlled a CityLift bus.

76. On June 18, 2019, M.M. was a passenger on the CityLift bus being driven, operated, and/or controlled by Defendant Walker, who was the duly authorized agent and/or employee of Defendant MV Transportation.

77. On June 18, 2019, Defendant Walker unlawfully transported M.M. to Morton, Illinois and abandoned M.M. at Casey's General Store.

78. Upon information and belief, on June 4, 2019, a similar incident occurred between a CityLift driver and a special needs child. Specifically, the CityLift driver dropped the special needs child off in a location that was not the scheduled drop-off or pick-up location – in other words, the CityLift driver abandoned the child in a random location. The mother of that special needs child complained to CityLift, thereby putting CityLift (Defendant Greater Peoria) and Defendant MV Transportation on notice that CityLift drivers were not following proper procedures for transporting special needs children.

**79.** On, before, and subsequent to June 18, 2019, Defendant MV Transportation was negligent in one or more of the following ways:

    a. Failed to properly, adequately, and thoroughly investigate, research, and/or conduct background checks on employees and/or agents of Defendant MV Transportation, that are expected to operate, drive, and/or control Defendant Greater Peoria's vehicles when it knew or should have known that Defendant MV Transportation has had previous employees improperly transport special needs passengers;

    b. Failed to properly train, advise, direct, and/or supervise employees and/or agents of Defendant MV Transportation that are expected to operate, drive, and/or control Defendant Greater Peoria's vehicles in how to provide passenger assistance when Defendant MV Transportation knew or should have known that Defendant MV Transportation has had previous employees and/or agents act inappropriately towards passengers while acting in the scope of their employment;

    c. Failed to recognize that Defendant Walker could pose a danger to passengers before allowing him to operate, drive, and/or control Defendant Greater Peoria's vehicles;

    d. Improperly allowed Defendant Walker to operate, drive, and/or control Defendant Greater Peoria's CityLift vehicle without first adequately screening Defendant Walker's employment and personnel history and thereby failed to discovery warning signs that Defendant Walker would act inappropriately to passengers;

    e. Improperly allowed Defendant Walker to operate, drive, and/or control Defendant Greater Peoria's CityLift vehicle without first performing adequate psychological or other testing to discover whether Defendant Walker would act inappropriately towards passengers;

    f. Failed to do an adequate background search of Defendant Walker.

**80.**    In light of the facts set forth in this Complaint, Defendant MV Transportation owed a duty to M.M. to act with reasonable case under all the circumstances. Defendant MV Transportation breached that duty.

**81.**    As a proximate cause of the aforementioned negligent acts and/or omissions of Defendant MV Transportation, M.M. has suffered and will continue to suffer injuries in the personal and pecuniary nature.

WHEREFORE, Plaintiff, as next friend of M.M., prays for judgment against Defendant MV Transportation, and an award of compensatory damages and for any additional relief that is just and proper.

### Count V – Negligent Supervision
### Defendant Greater Peoria

**82.**    Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**83.**    On or before June 18, 2019, Defendant Greater Peoria was in the business of providing transportation services within the City of Peoria and surrounding area. On or before June 18, 2019, Defendant Greater Peoria hired Defendant MV Transportation to provide personnel who would operate, drive, and/or control Defendant Greater Peoria's vehicles, including the CityLift buses.

**84.**    Defendant Greater Peoria was negligent in not adequately supervising Defendant MV Transportation, such that it had not sufficiently seen to the training and informing of paratransit personnel, or adequately seen to Defendant MV Transportation's training and informing of the personnel who would be operating, driving, and/or controlling Defendant Greater Peoria's vehicles so that the personnel would be duly informed about

the paratransit policies and professional practices, including policies relating to the CityLift program.

**85.** Due to Defendant Greater Peoria's negligent supervision, Defendant Walker unlawfully abandoned a special needs child who was the care of the CityLift program at a gas station. As such, Defendant Greater Peoria's negligent supervision was the proximate cause of M.M.'s injury.

WHEREFORE, Plaintiff, as next friend of M.M., prays for judgment against Defendant Greater Peoria, and an award of compensatory damages and for any additional relief that is just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

> Respectfully submitted,
> */s/ Shawn W. Barnett*
> One of the attorneys for Plaintiff
> Attorney No. 6312312

Hale & Monico, LLC
Andrew Hale
Shawn W. Barnett
53 West Jackson, Suite 357
Chicago, IL 60604
(312) 870-6905